UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FRANCISCO ENRIQUE FLORES SUAREZ,  Plaintiff,  v.  UNITED STATES OF AMERICA, and THE DRUG ENFORCEMENT ADMINISTRATION  Defendants. | Civil Case No.: 1:15-cv-23717  **COMPLAINT** |

Plaintiff, Francisco Enrique Flores Suarez, through undersigned counsel, for his complaint against the United States of America and the Drug Enforcement Administration ("DEA", collectively "Defendants"), alleges the following:

## NATURE OF ACTION

1. This is an action for the return of a Beechcraft Super King Air 300 airplane (the "Plane", or "YV506T") seized by the DEA on August 6, 2015, at Opa-locka Executive Airport ("Opa-locka"), located in Opa-locka, Florida. For the reasons stated herein, Mr. Flores was, and continues to be deprived of lawful possession of his property, and is entitled to the Plane's immediate return.

## PARTIES

2. Plaintiff, Mr. Francisco Enrique Flores Suarez, is a citizen of Venezuela and a businessman currently residing in Valencia, Venezuela.

3. Defendants are the United States of America and the DEA.

1

**JURISDICTION AND VENUE**

4. This Court has original jurisdiction over this matter. First, original jurisdiction exists under 28 U.S.C. § 1331 because this matter poses a Federal question arising out of the Defendants' violation of the Fifth Amendment to the United States Constitution. Further, Congress grants original jurisdiction to the federal district courts for seizures executed under United States law. 28 U.S.C. 1356. Finally, pursuant to 28 U.S.C. § 1361 this court has original jurisdiction for any action seeking to compel a United States officer, employee, or agency to perform a duty owed to a plaintiff.

5. This Court is the appropriate venue for this matter. The events giving rise to the present claim substantially occurred in this jurisdiction. 28 U.S.C. § 1391(e). The Defendants, without warrant, seized the Plane on August 6, 2015, at Opa-locka, which is within this Court's physical jurisdiction.

**FACTUAL ALLEGATIONS**

6. Kingdom Flores Negociaciones CA ("KFN CA") is a Venezuelan corporation owned and managed by Mr. Flores.

7. FGF Aviation, LLC ("FGF"), is a Delaware limited liability corporation owned by Mr. Flores.

8. In 2011, FGF purchased the Plane from Banyan Air. The airplane was and continues to be nationalized in the United States.

9. Like citizens, airplanes have nationality and are required to be registered with their country of nationality. The country of nationality will then issue a registration number that must also be displayed on the tail of the registered plane.

10. To operate the Plane in Venezuela without having to first nationalize it, FGF obtained a temporary operation license, registration and tail number, specifically YV506T. The "T" designation is used for temporary registrations and tail numbers. Venezuelan airplane registrations are handled by the Venezuelan equivalent of the Federal Aviation Administration ("FAA"), Instituto Nacional De Aereonautica Civil ("INAC"), or in English, the National Institute for Civil Aeronautics.

11. In order to nationalize an airplane in Venezuela, an owner must either be a Venezuelan national or registered Venezuelan corporation.

12. From time to time, FGF leased the Plane to KFN CA, allowing Mr. Flores to conduct business flights in Venezuela for his various corporate needs.

13. FGF renewed the plane's registration in 2012, and again in 2014. INAC grants temporary registrations for up to one year, and a plane owner can seek further renewals in up to one-year intervals.

14. The 2014 renewal was approved notwithstanding a delay because the Plane required engine parts that were not delivered and installed in time for a 2013 registration renewal. Because the engine parts were not produced in a timely manner, INAC absolved FGF of having to renew the registration within the required deadline.

15. Airplanes operating in Venezuelan airspace need more than just INAC registration. These airplanes must also receive tax licenses from the Venezuelan equivalent of the Internal Revenue Service ("IRS"), the Servicio Nacional Integrado de Administración Aduanera y Tributaria ("SENIAT"), or in English, the National Integrated Service for the Administration of Customs, Duties, and Taxes.

16. Although the Plane received a renewed registration in 2014, the Plane lost its temporal admission from SENIAT on or around July 2014. Instead of renewing the Plane's temporary license, Mr. Flores and his associates decided to move the Plane to Aruba. This process is referred to as "Re-Exportation" in aviation parlance. The Plane made its last flight within Venezuelan airspace on July 18, 2015, when it was flown to Oranjestad, Aruba, specifically Queen Beatrix International Airport. From Aruba, pilots flew the Plane to the Dominican Republic.

17. On September 5, 2015, pilots next flew the Plane from the Dominican Republic to Opa-locka. From Opa-Locka, pilots flew the plane to Tamiami Airport ("Tamiami") in Tamiami, Florida. At Tamiami, CR Aviation Incorporated ("CR Aviation") received the Plane into their physical custody. In preparation for future potential flights by the Plane in Venezuela, CR Aviation were responsible for making all necessary repairs and modifications INAC requires to ensure the Plane's airworthiness under Venezuela law.

18. Mr. Flores purchased the Plane from FGF on April 20, 2015. He purchased the plane in his individual capacity. Prior to this date, Mr. Flores and his associates decided that they would nationalize the Plane in Venezuela. In order to achieve the Plane's nationalization, Mr. Flores and his associates determined that Mr. Flores should purchase the Plane in his individual capacity so that they could comply with Venezuelan nationalization laws.

19. On June 15, 2015, Mr. Flores executed a special power of attorney in Venezuela, allowing Mercedes Raquel Vila Arias, an employee of KGF CA, to secure a registration number for a repatriation flight to Venezuela. INAC approved a single flight from Miami, Florida, to Maiquetia, Venezuela. This flight would utilize the new registration number and enable Mr.

Flores to complete the nationalization process in Venezuela. The Plane received this special registration, number YV3118, and it remained valid from June 23, 2015, to September 20, 2015.

20. On July 15, 2015, the Plane was transferred from CR Aviation's Tamiami hangar to Landmark Aviation's Tamiami hangar. Upon information and belief, at no time did the plane leave the ground. In order to satisfy Venezuelan airworthiness, the Plane had to be certified by a corporation authorized by INAC. Therefore, Mr. Flores decided to move the plane from Landmark Aviation's Tamiami hangar, to Leader Air Services's Opa-locka hangar. At Opa-locka, the Plane would receive its airworthiness certification and have its new registration number, YV3118, painted on the tail for the flight back to Venezuela. To date, this is the last time the plane ever flew.

21. On August 1, 2015, pilots flew the Plane from Tamiami, to Opa-locka. Prior to the Plane's departure from Tamiami, FAA agents performed a "ramp-check." During a ramp-check, FAA agents certify that all of the aircraft's documents are in order and that the plane may lawfully fly. The Plane received FAA approval to make the short flight.

22. Upon landing at Opa-locka on August 1, 2015, the FAA completed a second ramp check. During the check, the FAA required the pilots' presence and the Plane's representative. At that time, the Plane was in Leader Air Services's sole physical custody because their agent, Mr. Jose Aguilar, was assigned to complete the needed preparations for the nationalization flight to Venezuela. Therefore, the FAA met with the pilots and Mr. Aguilar.

23. On August 3, 2015, Mr. Rodolfo Pulgar, a representative of Mr. Flores's from KFN CA, met with FAA officials to discuss the Plane's official transfer to Leader Air Services's hangar. On or around that date, there was a problem. The FAA alleged that there existed no flight record for the Plane's September 5, 2014 entry to the United States. The FAA further

alleged that there existed no flight approval for the Tamiami to Opa-locka flight on August 1. Finally, the FAA claimed that the Plane had made an unauthorized flight with a three person crew in March 2015 to Maiquetia, Venezuela.

24. On August 6, 2015, without warrant or cause, the DEA placed a lock on one of the plane's turbine propellers, preventing the Plane from departing. At this point the DEA officially seized the plane into their sole physical custody.

25. On August 7, 2015, Mr. Pulgar, along with the undersigned Luis Cordero, met with three DEA agents and FAA agents at Opa-locka. Two of the agents were Special Agent Jesus Alvarez and Task Force Officer Rolando Rios. Both are DEA employees. Without a warrant, these agents requested permission to board and search the plane. Mr. Cordero granted their request. As expected, the agents boarded the plane and found no presence of unlawful activity. In full cooperation with all of the DEA agents' requests, a handler with a drug detecting canine (the "canine") was allowed to board the Plane. Again, as expected, the canine did not find evidence of narcotics. However, to the surprise of Mr. Cordero and Mr. Pulgar, the handler explained that the canine "displayed interest", suggesting under the handler's interpretation that narcotics may have been present on board the Plane at some prior time. With the cooperation of all parties and counsel, the DEA were invited and allowed to perform a secondary inspection on the Plane, referred to as an "ion sweep".

26. To date, the results of the ion sweep have never been provided to Mr. Flores, his associates, or counsel.

27. Subsequent to the Plane's seizure, the FAA confirmed with Mr. Pulgar that it did in fact have the flight manifest for all flights taken by the Plane, including the flights that occurred on September 5, 2014, and August 1, 2015.

28. After the seizure, Mr. Flores and Mr. Pulgar discovered that INAC had incorrectly matched registry YV3118 to an abandoned plane. Mr. Flores sent INAC a letter on August 18, 2015, requesting that they correct this serious error. In or around the end of August 2015, INAC contacted Mr. Pulgar and informed him that they had in fact made this error, but would not make a public or written admission of their mistake. According to INAC, the registry was now properly recorded and the Plane was certified for the repatriation flight.

29. Since August 6, 2015, Mr. Flores, FGF, KFN CA, and all interested parties have not had any access to the Plane. Therefore, the Plane has remained in the sole physical custody of the DEA and United States Government.

30. Upon information and belief, the Plane was moved from Opa-locka to Fort Lauderdale International Airport on August 20, 2015.

31. On September 20, 2015, the registration YV3118 lapsed, preventing the Plane from making the required repatriation flight.

32. As of October 6, 2015, the DEA have not served counsel, Mr. Flores, or any interested party with a written notice of seizure.

33. Although counsel have performed diligent searches, including using a federal website for seizures, there exists no known publication notice of the Plane's seizure.

**Count One: The DEA Have Violated The Fifth Amendment And Must Return The Plane Pursuant to Section 983(a)(1)(F) of Title 18 of the United States Code.**

34. Mr. Flores repeats and realleges the allegations of paragraphs one through thirty-three as if fully set forth herein.

35. The Defendants have violated the Fifth Amendment of the United States Constitution through their continued possession of the Plane. Specifically, the Defendants have deprived Mr. Flores of his personal property without Due Process.

36. Under 18 U.S.C. § 983(a)(1)(A), the DEA should have provided Mr. Flores with written notice of the seizure no later than sixty days after the seizure occurred. The DEA seized the Plane on August 6, 2015, and by law therefore had to notify Mr. Flores of the seizure by October 5, 2015.

37. There exist no reasons why the DEA could have been excused from serving Mr. Flores within the statutory sixty day period. The DEA has not initiated a civil or criminal suit in an Article III court. *See* 18 U.S.C. § 983(a)(1)(A)(ii); 18 U.S.C. § 983(a)(1)(A)(iii). Further, the DEA is fully aware that Mr. Flores owns the Plane. *See* 18 U.S.C. § 983(a)(1)(A)(iv). The DEA is also not excused from the sixty day written notice requirement because the DEA, and not a local or state law enforcement agency, seized the plane. *See* 18 U.S.C. § 983(a)(1)(A)(iv). Therefore, the DEA has failed to comply with the statutory seizure notice requirements. *See* 18 U.S.C. § 983(a)(1)(A).

38. Even if the DEA received an extension to serve written notice on Mr. Flores, such notice was incorrectly granted. *See* 18 U.S.C. § 983(a)(1)(D). A written notice period may be extended based on: (1) danger to the life or safety of an individual; (2) flight risk; (3) fear of destruction of evidence; (4) fear that witnesses will be intimidated; and (5) jeopardy to an investigation, or delay of trial. *Id.* There exists no evidence that any of these factors would be implicated if the DEA provided the statutorily required written notice to Mr. Flores. Therefore, the DEA inexcusably failed to comply with federal law and provide Mr. Flores with written notice by October 5, 2015.

39. Pursuant to 18 U.S.C. § 983(a)(1)(F), once the DEA fails to provide written notice as is required by 18 U.S.C. § 983(a)(1)(A), the property must be returned to the physical possession of its owner. There exists no dispute as to Mr. Flores's ownership of the Plane or that the DEA had to provide written notice by October 5, 2015. Therefore, the government must return the Plane to Mr. Flores's sole physical possession immediately. *See* 18 U.S.C. § 983(a)(1)(F).

40. The United States government's continued detention of the Plane is unlawful because the DEA never provided Mr. Flores, counsel or any interested party with written notice within the required sixty day period. Therefore, the government is willfully violating Mr. Flores Fifth Amendment right to his property. As a result of the government's actions Mr. Flores has suffered, and continues to suffer damages and irreparable harm.

**Count II: The Government Must Pay Attorney's Fees Pursuant to 28 U.S.C. § 2412.**

41. Mr. Flores repeats and realleges paragraphs one through forty as if fully set forth herein.

42. Pursuant to the Equal Access to Justice Act codified at 28 U.S.C. § 2412, Mr. Flores requests an award of attorney's fees. In a civil action, if this Court finds that the United States's actions were not substantially justified, then this Court should award attorney's fees to the plaintiff.

43. The present action is a civil action.

44. The Defendants' are unjustified in refusing to return the Plane.

45. Mr. Flores has incurred attorney's fees in defense of the Defendants' unjustified position.

46. Accordingly, this Court should award Mr. Flores attorney's fees incurred in pursuing this action against the Defendants because they seized the Plane without affording Mr. Flores Due Process as required by the Fifth Amendment.

WHEREFORE, Plaintiff Francisco Enrique Flores Suarez demands the following relief:

(i) an Order compelling the Defendants to immediately return Beechcraft Super King Air 300, serial number FA-006;

(ii) an Order awarding attorney's fees incurred in pursuing this action to Mr. Flores pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(iii) such other and further relief as the Court may deem just and proper.

Dated: October 6, 2015
Miami, Florida

                                  Cordero & Associates

OF COUNSEL

| | |
|---|---|
| Michael Weinstein | By:_____/S/_____ |
| Mweinstein@corderoassociates.com | Luis A. Cordero |
| Cordero & Associates | FL Bar ID#856400 |
| 200 South Biscayne Boulevard, Suite 4650 | lcordero@corderoassocaites.com |
| Miami, Florida 33131 | Cordero & Associates |
| Telephone: (305)-358-1666 | 200 South Biscayne Boulevard, Suite 4650 |
| Fax:         (305) 777-2670 | Miami, Florida 33131 |
| | (305) 777-2677 |
| | (305) 777-2670 FAX |